## John Bowker *v*. Henry W. Smith.

After the levy of an execution on land of a partner for a partnership debt has become complete by the lapse of a year from the time of the levy, a creditor of the individual partner cannot defeat the levy for the partnership debt by attaching the same land and levying his execution on it.

Writ of Entry. The demanded premises were conveyed by the executors of one Wood to one Chapman, January 17, 1856. Plaintiff claimed that one Handy paid for the land when it was conveyed to Chapman and that by a resulting trust the title rested in Handy. Defendant claimed that the money belonged to the firm of C. Tolman & Co., of which firm Handy was a member, and that the resulting trust was to the firm. Plaintiff being a creditor of Handy, attached the land October 12, 1859, obtaining judgment November 16, 1861, and levied his execution upon the land, April 11, 1862.

The Cheshire Bank, being a creditor of C. Tolman & Co., commenced a suit against said firm, Feb. 21, 1857, which was served upon Handy. The officer made return that the other members of the firm " not being inhabitants of this State nor either of them, I have made no further service of this writ." The officer's return of attachment was that he attached, January 23, 1857, all the right, title and interest that Handy had in the premises. April 2, 1858, judgment was rendered against Handy " as a co-defendant with " the other partners, and the execution against him " as a co-defendant " was levied on the premises, September 14, 1858. The appraisers' certificate on the execution recited that " having carefully examined a certain tract of land shewn us as the estate of the within named debtor, George Handy," &c. The officer's return on the execution stated that he appointed an appraiser for Handy, he having been notified and requested, &c., " and having neglected and refused to appoint any," that the appraisers were sworn to appraise such real estate as should be shown them " as the estate of the said debtor George Handy."

The Bank conveyed to Richardson, April 6, 1863. Richardson conveyed to defendant, March 26, 1864.

Plaintiff objected that, in the suit of the Cheshire Bank, the writ being served on Handy alone, the judgment and execution being against him, and the levy being made upon the land shown to the appraisers as the estate of Handy, the defendant could not show by parol evidence that the money paid for the land belonged to C. Tolman & Co. ; that the bank being a creditor of the firm, and having levied upon the land as the property of Handy, the plaintiff being a creditor of Handy would hold the land as against the bank and the defendant claiming under the bank, although the plaintiff's levy was subsequent to the levy of the bank.

*Vose & Cushing*, for the plaintiff.

*Wheeler & Faulkner*, for the defendant.

Perley, C. J. The Cheshire Bank, creditors of C. Tolman & Co., levied their execution on land of Handy, one of the partners, on the

14th of September, 1858. The plaintiff, for a debt due from Handy alone, attached the same land in mesne process on the 12th of October, 1859, after the title of the bank under their levy had become absolute as against Handy by the lapse of a year from the time of their levy. The defendant has the title of the bank; and the main question would seem to be whether after the creditors of a partnership have levied their execution on land belonging to one of the partners, and their title as to him has become complete by the lapse of a year, a creditor of the individual partner may take the same land for his debt and defeat the prior title derived under the levy for the partnership debt. There is no suggestion of any fraud in this case. If this may be done after one year, I see no legal reason why it may not be done at any time short of twenty years. Several serious inconveniences would follow from allowing the preference of an individual creditor to the application of his debtor's property to be asserted after the same property had been finally and absolutely appropriated to the payment of a partnership debt under legal process.

The levy of the execution is by law made the public evidence of title. It is required to be returned into court and also to be recorded in the registry of deeds, which the law provides for giving publicity to all titles in land. The execution creditor, after the lapse of one year from the time of the levy, would appear by the record to have a complete title under the law which provides for the application of a debtor's property to the payment of his debts; yet he, and purchasers under him, if the claim here set up were admitted, would be liable to have their title drawn in question until the claim was barred by the general statute of limitations.

Then, again, if the claim to this preference over the property of the individual partner could be made at an indefinite time after it had been levied on for a debt of the firm, it would greatly embarrass the settlement of the partnership accounts; for the partnership accounts could not be finally adjusted till it was certainly known that there was no outstanding demand against the partner, that might be levied on the same land which had been taken for the partnership debt. Until the title under the levy for the partnership debt was defeated by a levy for the private debt of the partner, it would appear that he had paid the partnership debt by the levy on his land out of his private funds, and that he should be allowed for it in settling the partnership account; and when the title under the levy was defeated by the individual creditor, he would be liable to the partnership for the amount of the debt levied on his land, if it had been allowed him in settlement.

If the preference of the individual creditor to the property of his debtor could be claimed after it had been finally appropriated to the payment of a partnership debt, it would seriously impair the remedy which the law gives to the creditors of a partnership for the satisfaction of their debts. The preference of the individual creditor does not in this State, though it is otherwise in some jurisdictions, depend on the question whether the property of the individual is such that enough will be left to pay the individual debt without coming on the property taken for

the partnership debt.   The creditor of the individual partner may en-
force his preference, if seasonably claimed, though the property of the
partner was abundantly sufficient to pay all his individual debts and all
debts of the partnership.   In this case, for instance, it does not appear,
and it was not necessary for the plaintiff to show, that Handy had not
property enough to pay all his private debts and also this partnership
debt.   In such a state of facts, where there is abundance of the part-
ner's property liable by law to pay the individual and partnership debts,
if the individual creditor allows the partnership creditor to appropriate
his debtor's property to the payment of the partnership debt, and after-
wards, when the partnership debt is satisfied by the levy, defeats the
title under it by interposing his individual claim, what remedy has the
partnership creditor for his debt?

His judgment is satisfied, and his debt is gone ; the officer's return of
the levy shows this ; and he can have no further proceedings for his
debt, unless, which is at least doubtful, he can revive his judgment by
the action of debt which the law gives where the judgment was satis-
fied " by an extent or levy upon estate or property not liable to be
taken on the execution."   Such a case certainly does not come within
the terms of the statute which gives this action of debt : for the proper-
ty of the partner is liable to be taken, and is rightfully and legally
taken, on the execution against the partnership, and the title under the
levy is good until it is defeated by matter arising subsequent to the levy.
But suppose, after the lapse of a year, or ten or fifteen years, from the
time of the levy, the title under it is defeated, and the partnership credi-
tor brings his action of debt against the partnership, and recovers a new
judgment, what is his chance worth of then finding property of the in-
dividual partner to answer for the debt, though when he made his levy
there was abundance of other property that might have been taken on
his execution?

This equitable preference extends to personal as well as real estate.
If no claim of an individual creditor is interposed, the officer who serves
an execution against the partnership is authorized to take, and, if ne-
cessary to satisfy the execution, is bound to take, personal property of
the individual partner, and sell it on the execution.   Certainly no claim
can be made by the creditor of the individual partner against the officer
who took and sold the property on the execution according to his duty
and his precept ; and it is equally clear that no such claim can be main-
tained against the purchaser at the sheriff's sale.   It would seem to fol-
low that if the individual creditor would assert his preference over the
personal property of his debtor he must do it while the proceedings are
in *fieri* and the property is in the custody of the law, and that he must
be understood to have waived his right, if he makes no claim till the
property has been finally appropriated to the satisfaction of the partner-
ship debt.

These are some of the reasons which lead me to apprehend that, if
this claim to defeat the title derived under a levy for a partnership debt
at an indefinite period after the levy was complete were admitted, the
remedy of creditors for partnership debts would be seriously impaired,

and the affairs of the partners and of all who were interested in the settlement of their accounts, be left for a long time in a state of great uncertainty and embarrassment.

On the other hand I can see no ground that the creditor of the individual partner has to complain if he is required to bring forward and assert his right to a preference in the application of his debtor's property before the partnership creditors have made a final and absolute appropriation of the same property to the payment of their debts under legal process. When a partnership fails and the property of the firm and of an individual partner is taken for their debts, the legal proceedings are of a public character. The personal property is taken into the custody of the law; the attachment of land is filed with the town clerk for notice to all who are interested in the title; the levy of the execution is returned into court, and also recorded in the registry of deeds. By these different provisions the law has taken care that all persons interested shall have the means of knowing with ordinary diligence what claim is made to the property; and it is the evident intention of the law to charge all those who have any conflicting claims to the property with notice of these legal proceedings. The reason of the rule which makes a pending suit relating to the title of land notice to all the world, applies here in full force. It is in substance and effect a proceeding *in rem* as was held in *Benson* v. *Ela*, 35 N. H. 402. In that case, as in this, the question was upon the claim to a preference in the application of property for the payment of partnership and individual debts; and it was held that the creditor of the partnership by omitting to make his claim in due time and proper legal form was held to have waived and lost his equitable right to a preference in the application of the property attached. As to the character and effect of the proceedings by which under our statutes property is applied to the payment of debts, the court say, page 418 : " In the institution of a suit, and prosecuting it to judgment the proceedings are attended with so much publicity and notoriety that it may be consistently assumed that all persons claiming liens which may be defeated by reason of the priority to which the debt declared on in the suit is entitled, have opportunity to make themselves parties to the proceedings. In proceedings which operate *in rem*, notice to all interested and an opportunity to appear and assert their rights are always presumed, and this presumption lies at the foundation of the doctrine that judgments *in rem* are conclusive upon all persons. As to the priority to which the judgment is entitled by reason of the character of the debt on which it is founded, the judgment may be considered as in the nature of one *in rem*. The debt when it is passed into judgment becomes merged in it, and the priority which attaches to the debt follows as one of the legal consequences of the judgment, binding the property, in the application of it to the payment of debts, to the preference to which the debt is entitled. In this view the judgment, in its effect and operation, is strictly in the nature of a proceeding *in rem*." The general doctrine here asserted, that the notoriety of the proceedings by which the law applies the specific property of a debtor to the payment of his debts gives them the character of a proceeding *in rem*, is appli-

cable to the question in this case as well as to that in *Benson* v. *Ela.*
The general principle applied in that case I take to be this : when all
the steps prescribed by law have been followed and the property of a
debtor has been applied finally under the law to the payment and satis-
faction of a debt, all the property of the debtor in the thing so appro-
priated has passed to the creditor against all the world ; any other con-
flicting claim to the application of the property must be interposed be-
fore the debt has been satisfied by the levy and the lapse of a year
afterwards ; and the express provision of the statute would seem to be
to the same effect, for by section 12 of chapter 218 General Statutes,
adopted from Revised Statutes, chapter 195, section 12, " all the
debtor's interest in such real estate shall pass by the levy as against all
persons." But if the same property could be taken for another debt of
the same person, all the debtor's property would not have passed as
against all persons. If creditors of another class can take the land for
their debts, as to them the debtor's interest did not pass under the prior
levy. I am unable to see why this provision of the statute is not deci-
sive that when the levy is regularly made and pursued, the same prop-
erty cannot be taken for another debt of the former owner.

The law gives the creditor of the individual partner all reasonable
opportunity to make his claim to a preference before the creditor of the
partnership can complete his title under a levy of his execution. The
individual creditor cannot be heard to say that he has wanted opportuni-
ty to assert his right to a preference over his debtor's property while the
proceedings were pending. If he allows the partnership creditor to at-
tach the land of the partner and levy his execution on it, and does not
within a year afterwards take any steps to assert his equitable preference,
it is quite reasonable to infer that he has other security with which he
is content, and that he has waived his right to the preference ; and I
think the creditors of the firm have the right to make that inference.

If it should be suggested that the debt due from the individual part-
ner may not be matured so as to allow a suit and attachment for his
debt until after the property is applied to satisfy the debt of the firm, it
is a sufficient answer to say that such a creditor is in no different situa-
tion from any other who has chosen to give a long credit and thereby
loses his opportunity to secure his debt on the property of a failing
debtor ; and besides, if equity required it, the legal proceedings might
be stayed till the claim on the individual property could be enforced at
law. *Crooker* v. *Crooker*, 46 Maine, 250 ; *Morrison* v. *Blodgett*,
8 N. H. 238, 248. It is very material to bear in mind that the credi-
tors of the partnership, in taking the property of the partner for their
debt, do no wrong and are guilty of no fraud, for the property of the
individual partner, so far as he is concerned, is just as much liable for
the partnership debts as the partnership property ; *Devagnes* v. *Noble*,
1 Merrivale, 359 ; *Wisham* v. *Lippincott*, 1 Stockton, 353 ; *Wash-
burn* v. *Bellows Falls Bank*, 19 Vermont, 287 ; and till the indi-
vidual creditor interposes his claim to a preference, the partnership credi-
tors cannot be supposed to know that the property will be needed for the
satisfaction of debts against the individual partner. The creditors of

the firm, when they take the property of a partner for their debt, do not set up any claim in conflict with the rights of his creditors. Their claim is subject to his right of preference, if he asserts it seasonably. And this broadly distinguishes the present case from that of a conveyance of partnership property by the partners to pay the individual debt of a partner; for in that case the appropriation of the partnership property to pay the individual debt, if it can take effect, is absolute and final. The property pledged to pay the partnership debt is, by the voluntary act of the partners, diverted from that object and placed beyond the reach of the partnership creditor, who has no remedy but by a direct attack upon the conveyance; whereas when the creditors of a firm, in the exercise of an undoubted legal right, attach the property of a partner for the debt of a failing partnership, they merely put the property in the custody of the law to be marshalled and appropriated according to the rights of the respective parties who make legal claim to it. The cases, in which it has been held that a conveyance of partnership property to pay the debt of a partner, when made to prevent it from going to pay partnership debts, is a fraud on creditors of the firm, do not seem to have any bearing on the present case; for certainly there can be no fraud in the legal and rightful attachment of the property, or in the levy of the execution on it for the partnership debt, when no conflicting claim of another creditor is asserted or notified.

The rule which gives the creditors of a partnership a preference over the property of the firm for the satisfaction of their debts, and the creditors of an individual partner a corresponding preference over his private property, was unknown to the early common law. It had its origin in the administration of the bankrupt law, and is now, as I understand, adopted in England as a general doctrine of equity in the marshalling of assets belonging to partnerships and the individual partners in cases of insolvency. In bankruptcy, when this rule is applied, the property of the partnership and also of the individual partner is all brought before the commission and passes to the assignee. The respective claims are proved, the funds are marshalled and distributed and finally applied according to the equitable rule before any creditor of either class can reach them. If there is a surplus of the private fund it is transferred to the partnership fund, and so, *vice versa,* nothing is left to future question or inquiry. The appropriation is conclusive and final. *Ex Parte Elton,* 3 Ves. 328; *Dutton* v. *Morrison,* 17 Ves. 207, Lord Loughborough's Order of March 8, 1794; 2 Cook's Bankrupt Laws, 375; *Jarvis* v. *Brooks,* 23 N. H. 136.

When the question arose here as to this equitable doctrine, we had no bankrupt law in force, nor any general insolvent law; and in most of the New England States the courts had no general jurisdiction in equity. There was no method by which debtors could be decreed bankrupt or insolvent, and their effects brought directly within the power of the court to be marshalled and appropriated according to this equitable rule. The justice and expediency of the rule were however generally admitted; and though there was no decree or judgment which declared the defendants to be bankrupt or insolvent, yet where partners

as such and the individual partners were sued for the partnership and individual debts, and the individual and partnership property taken in legal process, it was apparent in most such cases that there was an actual insolvency which called for the application of the equitable doctrine. The property attached being held in the custody of the law, the courts undertook to administer the equitable doctrine as far as they were able, by appropriating the property according to this rule without regard to the order of the attachment. The machinery of our courts did not allow them to proceed according to the methods used in England, but they adopted the doctrine and administered it as far as they were able by marshalling and appropriating the assets under our laws which provide for the satisfaction of debts by attachment and levy, and relied on the jurisdiction in equity to supply the defects of their method as well as it might. *Morrison* v. *Blodgett,* 8 N. H. 248; *Tillinghast* v. *Chaplin,* 4 Ames, R. I. 173, in which case it is said that even the courts of law administer the equitable doctrine in New England under our attachment laws in cases of *quasi* insolvency by giving to the creditor of the firm, though subsequently attaching the firm's property, a priority of lien and payment upon and out of such property. Per Ames, J.

I see nothing which leads to the conclusion that when this doctrine was adopted here there was any intention to admit it in practice farther than it could be administered and finally applied by the courts under our laws for the satisfaction of debts out of the debtor's property, in analogy to the course of the courts from which we have borrowed the doctrine. In England the preference must be claimed while the property is in the custody of the law, and the final distribution is made by the tribunal that has charge of the property and administers the equitable rule. The grounds on which the doctrine was admitted here afford no reason for supposing that this right remains to be asserted after the property, once taken for the satisfaction of debts, has been finally appropriated under legal process by levy on the property of the individual partner.

If we look to the decisions in other States, so far as my inquiries have gone, there is nothing in them to sustain the position that this preference can be claimed after a final appropriation of the property under legal process to debts of the other class. Where the question has been considered the decisions lead in the other direction. *Coover's Appeal,* 29 Penn. 1; *Wisham* v. *Lippincott,* 1 Stock. (N. J.) 353; *Baker* v. *Wimpee,* 19 Geo. 87; *Glyhorn* v. *Insurance Company,* 9 Geo. 319; *Coffin* v. *Taylor,* 21 Wend. 676.

In *Cleghorn* v. *The Bank of Columbus,* 9 Geo. 319, it was held that the equity in favor of the separate creditors will not be allowed to control or take away a right acquired by an execution at law on the part of the joint creditors against the separate estate. Lumpkin, J., delivering the opinion of the court, said, "the equity in favor of the separate creditors will never be enforced to control or take away a right acquired by legal execution on the part of joint creditors against the separate estate." And *Baker* v. *Wimpee,* 19 Geo. 87, is to the same point.

So in *Wisham* v. *Lippincott*, 1 Stockton, 353, it was decided that
" a joint creditor cannot be compelled in equity to proceed against the
joint estate before resorting to the separate property of an individual
member of the firm, by the partner whose separate estate is resorted to ;
that this would be inconsistent with the well established principle that
the partnership contract is several as well as joint. The principle that
separate creditors of each partner are entitled to be first paid before the
partnership creditors can claim anything, cannot apply to creditors who
have secured their debts by judgment and execution liens." William-
son, Chancellor, says in that case, " a court of chancery may undoubt-
edly, where the equities between the partners are to be adjusted and
where the assets are before the court, and the court called upon to mar-
shal them, apply such a rule. I have no hesitation in saying that when
a joint creditor of a firm has a judgment and execution levied upon the
separate effects of one of the partners, this court ought not, in mere com-
pliance with any such rule as that the separate creditors of each partner
are entitled to be first paid out of the separate effects of their debtor
before the partnership creditors can claim anything, to interfere with
such execution either on application of one of the partners or any credi-
tor of the firm, or separate creditor of any of its members."

In *Crooker* v. *Crooker*, 46 Maine, 250, 265, the question was as to
the preference claimed by creditors of the firm over land held by one of
the partners in trust for the firm, and in that case, though the point was
not directly decided, it was evidently understood that the preference
must be claimed before a judgment and levy by the other class of credi-
tors. May, J., says, " where there are outstanding equities or trusts
which a court of equity will enforce, the attaching creditor is not regard-
ed as acquiring by force of his attachment merely, any right which is in
its nature higher than the equitable rights which exist. These will be
regarded as existing until the attachment is perfected by a judgment
and levy."

In some of the States it seems that creditors cannot come upon the
fund which the equitable rule appropriates to the other class, until it
appears that the funds of their own class are insufficient, and also that
the other funds are not required for the satisfaction of their own class of
debts. *Daniel* v. *Townsend*, 21 Geo. 155 ; *Morrison* v. *Kurtz*, 15
Illinois, 193 ; *Gadsden* v. *Kasson*, 9 Rich. Eq. 252 ; *Flemming* v.
*Billings*, 9 Rich. Eq. 518.

These authorities from decisions in other States are very strong to
show that, after the property of an individual partner has been appro-
priated under legal process to the payment of a partnership debt, the
creditor of the individual partner cannot defeat the title derived under
the levy for the partnership debt by taking the same property on his
execution against the individual partner. And I have found no authori-
ties at all in conflict with those to which I have referred. Everywhere,
so far as my inquiries have gone, the preference must be claimed while
the property is in the control of the court, and may be marshalled ac-
cording to the equitable rule, by the order of the court or by auxiliary
proceedings at law or in equity, and cannot be set up after the property

has been applied by levy or sale to the satisfaction of the partnership debt.

When we turn to the law of this State, it is to be observed that this is the first attempt, so far as I am informed, that has been made to defeat a title derived under a levy for a partnership debt, on the ground that the land ought to go in payment of a debt due from the individual owner instead of being applied to pay a debt which he owed as partner; and I have met with no decision or dictum in any of our cases tending to show that this can be done. I do not find that we have any decision directly in point, but in several cases the equitable right to this preference has been explained and defined, and its limitations carefully stated.

In *Morrison* v. *Blodgett*, 8 N. H. 238, 248, Parker, J., after tracing the equitable doctrine to its origin in England, says, "If the courts of law are unable to carry out the principles of equity by distributing the joint and separate effects among the joint and separate creditors respectively, it may be well that they have been disposed to follow the principles established in chancery, so far as the nature of their proceedings will admit, leaving the equity jurisdiction to supply, as well as it may, the deficiency." In England the assets in bankruptcy are all in the control of the court, and before they can be reached by any creditor, are distributed according to the equitable rule, by the orders of the court.

The property, in our practice, is attached in a suit by the creditors of the firm and of the individual partners; and the court have not the same control over the funds by direct decree as in bankruptcy. But what they undertake to do is to distribute the joint and separate effects among the joint and separate creditors respectively as well as they may, and leave the rest to the jurisdiction in equity. They marshal the effects and distribute them according to the equitable rule as well as they may, and leave the rest to equity. This is Judge Parker's view of the way in which the right to this preference is administered under our laws for the satisfaction of debts. The effects taken for that purpose are to be distributed according to the equitable rule by the courts of law as far as they can; and equity may interpose to supply the defects of the proceedings at law. We have adopted the English doctrine and we administer it as well as we can at law. But in England the effects are marshalled and finally distributed by the court that holds them in control; and certainly it could not have been understood by Judge Parker, that, after the land of a partner had been applied to pay a partnership debt under our laws for the attachment and levy of land, the title under it could be attached in a suit at law, claiming the land by virtue of a levy begun under proceedings instituted after the former levy was complete.

In *Crocket* v. *Crain*, 33 N. H. 550, Eastman, J., says "the fact that a lien has been created by attachment in favor of a partnership creditor does not give him any advantage over the separate creditor; for the latter may, notwithstanding the previous attachment, attach and hold the property for his debt. Until the property is actually and legally applied to the payment of the partnership debt, the separate creditor may

interfere to prevent such application and cause his own debt to be first satisfied."

In *Benson* v. *Ela*, 35 N. H. 418, it was held, as has been before maintained, that the proceedings, by which under our laws the property of debtors is applied to different classes, are *in rem*, and of course the rights of all parties finally determined by the proceedings. This was not the main point decided in the case, but it was one of the steps necessary to reach the decision and cannot therefore be regarded as the mere individual opinion of the learned judge who delivered the judgment of the court, though his individual opinion on a question of this sort would be entitled to the highest respect. In the same case the process is laid down, (page 411), by which the respective claims of different creditors are to be determined in our practice. The decision and all the reasoning of that case go on the assumption that the rights of all claimants to the property, so far as the debtor's interest in it are concerned, are to be conclusively determined before there is a final application of it under process of law, and that when it is so applied the debtor's interest in it passes under the levy to the execution creditor. If it has been misapplied the remedy is not by attaching the title to the property derived under the levy, but by action against the party who has misapplied it.

So in *Holton* v. *Holton*, 40 N. H. 78, it is said by Fowler, J., that " it may be considered as well settled that the separate creditors of a partner have a preference over the separate estate of their debtor for the satisfaction of their debts, until it shall have been actually and legally applied and appropriated." I think it very clearly appears by reference to the cases in this State that it has all along been understood and conceded that this equitable preference must be claimed before the property is finally applied on execution to the payment of a partnership debt; that a completed levy for the partnership debt passes the title of the debtor to the execution creditor, and after that the preference cannot be claimed.

It is not necessary here to inquire whether the preference might be claimed after the levy was made and before the expiration of the year allowed for redemption, as the plaintiff's attachment was made after the lapse of that time.

It is, as I think, against the policy and plain interest of our laws for the satisfaction of debts. that, after a suit has been instituted, land attached for a debt, judgment rendered, the land of the debtor set off on execution in satisfaction of the debt, the levy returned and recorded in the registry provided for giving publicity to all titles in land, the same land may be taken for a debt against the same debtor, and the prior title under the legal proceedings defeated; and such a claim also appears to me in direct conflict with the express provision of the statute, before cited, that after such proceedings and levy " all the debtor's interest in such real estate s all pass by the levy as against all persons," &c. General Statutes, chapter 208, sec. 12. In this case all the steps required by the statute were taken and the levy legally made; why, then, in the absence of fraud, should not all the interest of the debtor, *as against*

*all persons*, pass to the creditor, as the statute expressly provides.

I find nothing in the practice of the English courts from which we have borrowed this equitable doctrine, nor in the law of other States, which gives any countenance to the position that after land of a partner has been applied in satisfaction of a partnership debt by the completed levy of an execution, the title derived under the levy can be defeated by a creditor of the individual partner who first asserts his claim after the title under the former levy is complete. In all other jurisdictions, so far as I am informed, the claim to the preference must be made before the appropriation of the land to the payment of the other class of debts is complete under legal process. In this State, though we have not an authoritative decision directly in point, we have a great weight of judicial opinion clearly and carefully expressed against the claim made by this plaintiff.

After the creditors of a partnership have levied their execution on land belonging to one of the partners, and their title under the levy has become absolute by the lapse of a year, I think that a creditor of the individual partner cannot take the same land and by the levy of his execution defeat the title derived under the previous levy for the partnership debt, and that on the case stated the defendant is entitled to judgment.

*Sargent, Nesmith and Smith, J. J.*, concurred.

*Bellows and Doe, J. J.*, dissented.